THE STATE, ON THE RELATION OF N. TREPAGNIER *v.* F. M. CROZAT.

The duration of an office which is held by executive appointment, and having no term fixed, can be filled at the pleasure of the Executive, is not enlarged by Article 96 of the Constitution of 1845, which provides that " the duration of all offices, not fixed by this Constitution, shall never exceed four years." This Article is a restriction upon the Legislature, and applies to those offices which were held either during good behavior, or for a longer term than four years. It does not enlarge the tenure of an office held by the will of the Governor.

The Act of April 10, 1811, provides that " for the parish of Orleans there shall be for the city of New Orleans an office of record of births and deaths, whereof the officer shall be appointed by the Governor." An office, thus created, is held during the pleasure of the appointing power. That appointing power was, originally, the Governor, and it is doubtful whether the Constitution of 1812, ( Sec. 9, of Art. 3,) making the Senate a component part of the appointing power as to officers established by *that Constitution*, and whose appointment was not therein otherwise provided for, made any change in the mode of appointing the Recorder of Births and Deaths. ( BUCHANAN, J.)

Whether the appointing power be vested in the Governor alone, or in the Governor and Senate, by the terms of the law creating the office of Recorder of Births and Deaths, it is an office *durante bene placito*. No term of duration was fixed by the Statute creating the office, and when such is the case, the office is not to be taken, or intended as an office during good behavior, but an office during pleasure. ( BUCHANAN, J.)

Article 96 of the Constitution of 1845 has nothing to do with offices, of which the tenure, under the law creating them, was *during pleasure*. That Article limits the duration of offices held during good behavior to four years. The tenure, *during pleasure*, is not susceptible of limitation, as it is subject to the will of the appointing power. ( BUCHANAN, J )

APPEAL from the First District Court of New Orleans. *Larue*, J. *Warfield* and *Dufour*, for plaintiffs, cited, *ex parte, Hennen*, 13 Peters, 259 ; *Nicholson* and another v. *Thompson* and another, 5 Rob., 367 ; *The State* v. *Percy*, 5 A., 282 ; *Kelly* v. *Gilly*, 5 A. 534. *Roselius* and *J. W. Collins*, for defendant and appellant.

OGDEN, J. The office of Recorder of Births and Deaths was not established by the Constitution ; it was created by an Act of the Legislature in 1811, and the power of appointment by that act was given to the Governor, and no limitation of the term of offices fixed. The Article 47 of the Constitution contains a proviso in the following words : " Provided, however, that the Legislature shall have a right to prescribe the mode of appointment to all other officers established by law." The power of the Governor to make the present appointment is derived from the Act of the Legislature of 1811, creating the office. Under the authority of the cases cited by the counsel for the appellee, there can be no doubt the Governor could rightfully cause the office of the appellant to cease,

THE STATE
v.
CROZAT.

by the appointment of the Relator, with the consent of the Senate, for the reason that the Statute creating the office has fixed no term for its duration, unless there is some other law by which his power is restricted. Such a law is supposed by the counsel for defendant to exist in Article 96 of the Constitution of 1845, the effect of which, it is contended, was to make the office in question an office of four years fixed duration. The terms of that Article are as follows: "The duration of all offices not fixed by this Constitution shall never exceed four years." I consider that one of the objects of this Article was to limit the power of the Legislature, and also that from its terms it was applicable to those existing offices which were either held during good behavior, or for a term longer than four years, and that consequently it produced no enlarging effect upon the tenure of the office now in question, which was held at the pleasure of the Executive.

I am of opinion that the tenure of the office of Recorder of Births and Deaths has always been at the pleasure of the Executive, and that the Relator was legally appointed.

SLIDELL, C. J., VOORHIES, J., and CAMPBELL, J., concurring in the above opinion of OGDEN, J.

All the Judges being of opinion that the judgment should be affirmed, it is, therefore, decreed that the judgment of the District Court be affirmed, with costs.

BUCHANAN, J.    The office of Recorder of Births and Deaths was created by the act of April 10, 1811, in the following words:

"For the parish of Orleans, there shall be for the city of New Orleans, an office of record of births and deaths, whereof the officer shall be appointed by the Governor."

I am of opinion that this office, thus created, was an office during the pleasure of the appointing power. That appointing power was, originally, the Governor alone. It admits of doubt whether the Constitution of 1812 made any change in that respect. The Section 9 of Article 3 of that Constitution made the Senate a component part of the appointing power, as to offices established *by that Constitution*, and whose appointment was not therein otherwise provided for. The Constitution of 1845, Article 50, and the Constitution of 1852, Article 47, have repeated the Section 9, Article 3, of the Constitution of 1812, *totidem verbis*.

The practice, however, seems to have been that appointments of Recorder of Births and Deaths in New Orleans were made by the Governor and Senate. Accordingly, the three commissions in this record, issued by as many Governors, two to the respondent and one to the Relator, are all "by and with the advice and consent of the Senate."

Whether the appointing power in this instance be vested in the Governor alone, or in the Governor and Senate, I hold it to be clear that by the terms of the law creating the office, it is an office *durante bene placito*. No term of duration was fixed by the Statute creating the office, and the Supreme Court expressly decided in the case of *Nicholson* v. *Thompson*, 5th Robinson's Reps., that when such was the case, the office was not to be taken or intended as an office during good behavior, but an office during pleasure.

The respondent relies upon the Article 96 of the Constitution of 1845, as giving him the right to hold this office for the full term of four years from the date of his commission, which is the 16th February, 1850.

But, in my judgment, that Article has nothing to do with offices, of which the THE STATE *v.* CROZAT. tenure, under the law creating them, enacted previous to that Constitution, was *during pleasure.* The Article reads as follows: "The duration of all offices not fixed by this Constitution shall never exceed four years."

The effect of that Article was to diminish, not to augment, the term of office. Accordingly, our predecessors, in the case of the State on the relation of *Baudoin* v. *Percy,* reported in 5th Annual Reports, decided that the commission of a Notary Public, granted in 1839, should be held to expire in four years from the going into effect of the Constitution of 1845. But the office of Notary Public, under the Statute of 1813, which created it, was an office *during good behavior.* It was properly held that the Article 96 of the Constitution of 1845, applied to that office, and curtailed its duration to four years, counting not retrospectively, but from the going into effect of the Constitution. The tenure during pleasure, is the very opposite of that during good behavior. Its duration is unsusceptible of being curtailed, because, from its very nature, it is arbitrary, and subjected to the will of the appointing power.

Taking this view of the question, I deem the argument of the counsel of defendant, drawn from the 23d Article of the Civil Code, to be inapplicable to the present case. The Article 96 of the Constitution of 1845 has not been copied in the Constitution of 1852. The omission of the limitation of the duration of offices may be viewed as, in some sense, a repeal, *pro tanto,* of the Constitution of 1845; although, in truth, it is a want of precision in language to speak of that Constitution as repealed. It is, in the words of Article 142 of the present Constitution, *superceded* by the latter instrument, as well in those Articles which are copied, as in those which are omitted. But the learned counsel says that the limitation of the duration of offices, by Article 96, was inconsistent with the Act of 1811 creating the Recorder of Births and Deaths, in New Orleans; and, by being so inconsistent, the effect was to repeal the Act of 1811. He proceeds to contend that the omission of the article of limitation in the Constitution of 1852, was tantamount to a repeal of a repealing act, which, by our legislation, does not revive the first act. The conclusion is sound, but the premises are defective. The Article 96 of the Constitution of 1845 is not inconsistent with the Act of 1811, according to my view, as above expressed; and, therefore, I hold the Act of 1811 to be in full force. The office of Recorder of Births and Deaths was, originally, and has never ceased to be, an office held during the pleasure of the Executive.

I am, therefore, of opinion that the judgment of the District Court should be affirmed.